IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2016

# IN RE: TIANNA B.

## Appeal from the Hamilton County Juvenile Court
### No. 263525    Robert D. Philyaw, Judge

_____

### No. E2015-02189-COA-R3-PT-FILED
### JULY 6, 2016

_____

The Department of Children's Services sought to terminate the parental rights of a father who had not seen his child in thirteen years and who had taken no steps to legitimate the child until after the petition to terminate was filed. After a trial, the court found that the grounds of abandonment by willful failure to visit and failure to establish or exercise paternity were established and that it was in the child's best interest to terminate the father's rights. On appeal, we conclude that the trial court erred in relying on Tenn. Code Ann. § 36-1-113(g)(9)(A) as a basis to terminate the father's rights, but that the trial court correctly determined that the father abandoned the child by willfully failing to visit as set forth in Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i). We affirm the trial court's judgment in part and reverse it in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Hamilton County Juvenile Court Affirmed in Part and Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined. CHARLES D. SUSANO, JR., J., filed a separate opinion concurring in part and dissenting in part.

Brian A. Caldwell, Chattanooga, Tennessee, for the appellant, Myron J. T.

Herbert H. Slatery, III, Attorney General and Reporter, and M. Cameron Himes, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the termination of a father's parental rights to a child who is currently sixteen years old. Tianna was born to Tamika B. ("Mother") in November 1999. Mother testified that she told Myron J. T. ("Father") that she thought the child was his, but no father was listed on Tianna's birth certificate. Father lived with Mother and Tianna during part of Tianna's first year of life, but there is no evidence that Father had any further involvement with Tianna once Mother and Father were no longer living together.

Mother was arrested and incarcerated when Tianna was two years old. Tianna went to live with her maternal grandmother along with her siblings, but at some point, her grandmother was unable to continue caring for the children and Tianna was placed into the temporary custody of the Department of Children's Services ("DCS"). Tianna was determined to be dependent and neglected in March 2012 and was placed in foster care. She has remained with the same foster mother with whom she was initially placed and her foster mother now wishes to adopt Tianna.

DCS first filed a petition to terminate Tianna's biological parents' rights to her in November 2014.[1] DCS did not know the identity of Tianna's biological father until Mother named Myron J. T. as the putative father during a conversation she had with a DCS employee in December 2014 or January 2015. Once DCS learned of Father's identity, it filed an amended petition to terminate, naming Myron J. T. as Tianna's father. In its amended petition, DCS alleged that Father "was indicated as a perpetrator of sexual abuse by the Department as a result of two prior investigations from 2001 and 2006 involving other children" and that "continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home." The grounds DCS asserted to support its petition for terminating Father's rights include (1) failure to establish or exercise paternity (Tenn. Code Ann. § 36-1-113(g)(9) and § 36-1-117(c)); and (2) abandonment by failure to visit (Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(i), 36-1-102(1)(C), and 36-1-102(1)(E)). Once Father was identified, a lawyer was retained to represent him. Father resides in California, and he participated in the trial court proceedings on two different occasions by telephone.

---

[1] The trial court terminated Mother's parental rights to Tianna in September 2015, and Mother did not appeal that decision.

2

The initial hearing took place on May 15, 2015, before Father's paternity was established, and Father testified as follows in response to questions by the guardian ad litem:

Q:     You haven't had any relationship with [Tianna] in 15 years, is that correct . . . ?

A:     Yes.  No, I haven't had no relationship with her in 15 years.

Q:     And do you have any intent to move back to Chattanooga, Tennessee, and try to have a relationship with her in the next month? Two months? Six months?

A:     I mean, of course, I would.

Q:     Of course, you would if what?

A:     I mean, in moving back to Tennessee?  No.  But coming there to . . . if she wants, you know, like I said, - - I heard a lot of things that she said she didn't want no relationship with me or whatever, but I don't want to make nobody - - I don't want to make her irritated or nothing like that.  But if she would love for me to come and visit her, upon her request, yes, I would.

Q:     Okay.  Speaking of that, you heard her caseworker at Centerstone and her foster mom say that she doesn't want to have a relationship with you, did you not?

A:     Yes, I heard that.  Like I said, you asked me the question would I come back to Tennessee, to move, and have a relationship with her. . . . But like I said, she don't want no relationship and she don't - - I mean, I don't know if - - if we did not have no relationship, she probably don't want to see me.

Q:     Yes.  And so, based upon that, do you still want to delay her happiness, permanency, and adoption in this case?

A:     And being what you're saying with the delay, like I said, yes, I would love for her to be in care to where . . . as far as a mom.  I don't know - - like you said, we don't know for sure that I am the father.  Even though the mother is saying that I'm the father, I would love, like I was saying, I would love to get a DNA [test] to see if I am the father.  So if I am, it's closure . . . for me, because this has drug on for many years.

The trial court then suspended the hearing until after Father was able to have a DNA test to confirm that he is Tianna's biological father.  A DNA report dated July 29,

2015, showed that Myron J. T. is, indeed, Tianna's biological father. The hearing continued on August 19, 2015. The DCS employee who was the case manager for Tianna testified about conversations she had with Mother and Father once she learned of Father's identity. She testified that according to both Mother and Father, Father was aware of Tianna's birth, but he did not establish his paternity before the termination petition was filed. The case manager further testified that based on her conversations with Tianna, the child had no memory of Father, she did not want to live with Father, and she very much wanted to be adopted by her foster mother.

In response to questions by the trial court, Father's attorney stated that he spoke with Father on the telephone and that Father told him he wanted to follow the wishes of his daughter and allow his rights to be terminated so she could be adopted. The DCS case manager then testified regarding Tianna's best interest and stated that Tianna was doing well in her foster home, she had been there for three years, and she believed it was in Tianna's best interest to be adopted by her foster mother.

The trial court issued a Final Decree terminating Father's parental rights to Tianna on September 23, 2015. The court found, in pertinent part, as follows:

> Respondent, Myron [J. T.], by and through his attorney, agreed not to contest the termination of his parental rights out of love and a desire that the child, Tianna [B.], remain with the foster mother in a stable and permanent home.

The court then wrote:

> Based upon statements by counsel, proof introduced at the hearing, and the entire record, from all of which the Court finds by clear and convincing evidence that the petition filed by the State of Tennessee, Department of Children's Services, is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that:
>
> . . .
>
> 3. Grounds for the termination of the parental rights of Myron [J. T.] to the child, Tianna [B.], exist in that:
>
> (1.) Respondent, Myron [J. T.], pursuant to T.C.A. §§ 36-1-113(g)(1), 36-1-102(1)(A)(i), 36-1-102(1)(C) and 36-1-102(1)(E), abandoned the subject child, by willfully failing to visit or making only token visitation with said child for four (4) months immediately preceding the filing of this petition, despite knowing that said child was in the state of Tennessee and despite being free and able to make such visits.

4

Specifically, the Respondent, Myron [J. T.], has stated that he was aware of the subject child's birth and was present during the first few years of the subject child's life. However, Mr. [T.] failed to maintain a relationship with the subject child or visit the subject child after her mother was incarcerated when the child was just two years old.

(2.) Respondent, Myron [J. T.], pursuant to T.C.A. §§ 36-1-113(g)(9) and 36-1-117(c), has failed to establish or exercise paternity of the child prior to the filing of the petition to terminate parental rights.

Specifically, Respondent, Myron [J. T.], failed to legitimate the subject child. In addition, the Respondent failed to pay a reasonable amount of expenses involving the child's birth despite notice that the child was to be born; has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child; has failed to seek reasonable visits with the child or has failed to make any more than token visits to the child; has failed to manifest an ability and willingness to assume legal and physical custody of the child; and placing the child in the legal and physical custody of Respondent would pose a risk of substantial harm to the child.

The trial court then considered the factors set forth in Tenn. Code Ann. § 36-1-113(i) and determined that terminating Father's rights was in Tianna's best interest. Accordingly, the trial court terminated Father's parental rights to Tianna and awarded her custody, control, and guardianship to DCS, including the right to consent to Tianna's adoption *in loco parentis*.

Father appeals the trial court's termination of his rights. He contends the trial court violated his constitutional right to parent and that it erred in the following ways: (1) terminating his parental rights on the grounds of abandonment (failure to visit) as defined by Tenn. Code Ann. § 36-1-102(1)(C) and § 36-1-102(1)(E); (2) terminating his parental rights on the grounds of failure to establish/exercise paternity pursuant to Tenn. Code Ann. § 36-1-113(g)(9) and § 36-1-117(c); (3) terminating his parental rights on the grounds of persistent conditions as defined in Tenn. Code Ann. § 36-1-113(g)(3); (4) finding that terminating his rights was in the child's best interest; and (5) concluding that the decision to terminate his rights was supported by clear and convincing evidence.

II. ANALYSIS

The standard for appellate review of parental termination cases was recently reiterated by the Tennessee Supreme Court:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under

5

Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H*., 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted), *petition for cert. filed sub nom. Vanessa G. v. Tenn. Dep't of Children's Servs*., No. 15-1317 (U.S. Apr. 27, 2016).

The termination of a parent's rights is one of the most serious decisions courts make. As the United States Supreme Court has said, "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Santosky v. Kramer*, 455 U.S. 745, 787 (1982). Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger, and of "severing forever all legal rights and obligations of the parent or guardian." Tenn. Code Ann. § 36-1-113(l)(1).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of a Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). While this right is fundamental, it is not absolute. The State may interfere with parental rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard*

6

*T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court or the reviewing court conducts a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

A.  Grounds for Terminating Father's Rights

1.  Abandonment

One ground on which the trial court based its decision to terminate Father's parental rights was its finding that Father abandoned Tianna, as that term is defined in Tenn. Code Ann. § 36-1-102.  A parent's rights may be terminated upon proof by clear and convincing evidence that the parent "abandoned" his or her child. Tenn. Code Ann. §§ 36-1-113(c)(1), (g)(1).  "Abandonment," for purposes of terminating a parent's rights, is defined to include the following:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of a parent . . . . , that the parent . . . either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). A court must find that the abandonment was "willful" for it to be actionable. To establish willfulness, in this context, a petitioner must show that "a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Audrey S.*, 182 S.W.3d at 864; *see In re Audrey S.*, 182 S.W.3d at 863-64 (an individual acts willfully if he or she knows what he is doing and has the intention to do what he or she is doing). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). A parent will not be found to have abandoned his child if his failure to support or to visit the child is not within his control. *Id.*

7

The trial court based its finding of abandonment on Father's failure to visit Tianna for the four months preceding the filing of the petition to terminate, which included the period from July 12, 2014, through November 14, 2014. The evidence was uncontroverted that Father had not seen Tianna since she was a young child. Father does not contend that he visited or tried to visit Tianna during the four-month period at issue. Instead, Father argues that he did not know for certain that he was Tianna's father until the results of the DNA test came back positive in July 2015. He suggests he should have had more than a couple of months following this test to initiate visitation with Tianna before having his rights terminated.

Father cites no support for his position and we find his argument lacks merit. Mother testified that she told Father while she was pregnant with Tianna that the baby was his, and Father lived with Mother and Tianna during Tianna's first year. Father testified that he bought some diapers and clothes for Tianna during that time. The DCS case worker testified that Father told her he had made an appointment to have a blood test to establish paternity before Tianna was two years old, but that the testing never occurred.

This is not a situation where the biological father is unaware that a woman with whom he has had sexual relations has conceived and borne a child. Instead, this is more like the situation in the case *In re E. L. R.*, E2014-00394-COA-R3-PT, 2014 WL 6735394 (Tenn. Ct. App. Dec. 1, 2014), in which the biological father was not named on the birth certificate, but he was aware of the child and knew it was possible that he was the child's father. *Id.* at *1-3. The child in that case was born in 2007, but his father did not attempt to become involved in the child's life until after the child was five years old and living with his maternal grandmother. *Id.* at *7-8. The father did not establish his paternity until after the petition to terminate was filed. *Id.* at *3. Under those circumstances, the Court of Appeals affirmed the trial court's decision to terminate the father's parental rights on the grounds of abandonment by failure to visit and failure to support the child. *Id.* at *8.

At the trial, Father offered no excuse for not visiting Tianna from the time she was less than two years old until the time of the hearings. He introduced no evidence suggesting he wanted to visit but was prevented from doing so. The record does not indicate when Father moved from Tennessee to California or whether Father is employed. Based on Father's testimony that he would visit Tianna if she wanted to see him, however, we believe it is fair to infer that Father had the capacity to visit Tianna in the four months prior to the filing of the petition to terminate. The trial court found Father was "free and able to make such visits." As the Court of Appeals has explained, "triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct." *In re Audrey S.*, 182 S.W.3d at 864. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* Under these circumstances, we find Father's failure to visit was willful. Moreover, we conclude the evidence is clear and convincing that Father abandoned

Tianna by failing to visit her, as that term is defined in Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i).

### 2. Failure to Establish or Exercise Paternity

In addition to abandonment, the trial court based its termination of Father's parental rights on his failure to establish or exercise his paternity before the petition to terminate was filed in violation of Tenn. Code Ann. § 36-1-113(g)(9) and § 36-1-117(c). When the petition to terminate was filed, the language of Tenn. Code Ann. § 36-1-113(g)(9) provided as follows:

> (9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person or, if no such petition is filed, at the time of the filing of a petition to adopt a child, is not the legal parent or guardian of such child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds:
>
> (i) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth;
>
> (ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;
>
> (iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102(1)(C);
>
> (iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;
>
> (v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or
>
> (vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3).

The trial court determined that Father's parental rights could be terminated pursuant to this section because he fit within the class of persons described in Tenn. Code Ann. § 36-1-117(c). This section provides, in pertinent part:

> (c) The parental rights of the putative biological father of a child who has not filed a petition to establish paternity of the child or who has not established paternity of the child who is the subject of an adoption proceeding and who meets any of the following criteria shall be terminated by surrender, parental consent, termination of parental rights pursuant to § 36-1-113, or by waiver of interest, before the court may enter an order of adoption concerning that child:
>
> (1) The biological father of a child has filed with the putative father registry, pursuant to § 36-2-318 a statement of an intent to claim paternity of the child at any time prior to or within thirty (30) days after the child's birth and has notified the registry of all address changes;
>
> (2) The biological father has been specifically identified to the petitioners or their attorney, or to the department, the licensed child-placing agency, or the licensed clinical social worker involved in the care, placement, supervision, or study of the child as the child's father by the child's biological mother in a sworn, written statement or by other information that the court determines to be credible and reliable;
>
> (3) The biological father has claimed to the child's biological mother, or to the petitioners or their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child; provided, that if the biological father has previously notified the department of the biological father's claim to paternity of the child pursuant to the provisions of the putative father registry, § 36-2-318(e)(3), the biological father shall be subject to all the requirements for waiver of notice provisions of § 36-2-318(f)(2) and to all requirements for filing a paternity petition; [or]
>
> (4) The biological father is recorded on the child's birth certificate as the father of the child . . . .

The introductory paragraph of Tenn. Code Ann. § 36-1-113(g)(9)(A) was modified with an effective date of March 23, 2016.[2] "Statutes are presumed to operate

---

[2] The introductory paragraph now reads:

> The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of

prospectively unless the legislature clearly indicates otherwise." *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998). The Tennessee Supreme Court has already considered whether an earlier modification of Tenn. Code Ann. § 36-1-113(g)(9)(A) should be applied prospectively or retroactively, and it determined that it should be applied prospectively. *In re D.A.H.*, 142 S.W.3d 267, 272-74 (Tenn. 2004). Thus, the version of the statute that was in force when the petition was filed governs this case.

The Supreme Court has instructed us that there are several ways that a biological father can be considered a child's "putative biological father," and that one way is if the child's mother identifies the individual as the child's biological father in a "sworn, written statement" or through information that the trial court deems "credible and reliable." *In re Bernard T.*, 319 S.W.3d at 598. In this case, the DCS case worker informed the trial court that Mother identified Myron J. T. as Tianna's biological father, and the court apparently deemed this information as credible and reliable.

A plain reading of these statutes seems to indicate that Father falls within the class of persons covered by Tenn. Code Ann. § 36-1-113(g)(9)(A) and § 36-1-117(c). However, the Court in *Bernard T.* declared that "[t]he grounds for termination in Tenn. Code Ann. § 36-1-113(g)(9) cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed." *Id.* at 599; *see In re Ashton B.*, W2015-01864-COA-R3-PT, 2016 WL 981320, at *13 (Tenn. Ct. App. Mar. 15, 2016) (stating that although the *Bernard* holding appears to be in direct conflict with the express language of Tenn. Code Ann. § 36-1-113(g)(9)(A), the Courts of Appeal "are not free to depart from the Tennessee Supreme Court's unequivocal holding.").

Because Father is the biological parent of Tianna, these statutes do not apply to him and could not be the basis for terminating his parental rights according to *Bernard T.* Thus, the trial court's decision that Father's parental rights could be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A) and § 36-1-117(c) conflicts with the Supreme Court's ruling and must be reversed. *See In re Cloey R.*, E2014-00924-COA-R3-PT, 2015 WL 273685, at *9 (Tenn. Ct. App. Jan. 21, 2015) (explaining that even though the father qualified as a "putative biological father" when the petition was filed, his rights could not be terminated by Tenn. Code Ann. § 36-1-113(g)(9)(A) because of the holding in *Bernard T.*).

DCS sought the termination of Father's rights based on two different grounds, but only one ground need be proven by clear and convincing evidence for Father's parental rights to be terminated. Tenn. Code Ann. § 36-1-113(g); *In re Carrington H.*, 483

a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds . . . .

Tenn. Code Ann. § 36-1-113(g)(9)(A) (March 23, 2016).

S.W.3d at 535; *In re Audrey S.*, 182 S.W.3d at 162. Thus, the fact that the trial court erred by relying on Tenn. Code Ann. § 36-1-113(g)(9)(A) and § 36-1-117(c) as grounds for termination does not detract from the trial court's conclusion, which we affirm, that DCS proved by clear and convincing evidence that Father abandoned Tianna within the meaning of Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i).[3]

B. Best Interest Analysis

Having found clear and convincing evidence exists to terminate Father's parental rights, we next consider whether the trial court properly determined that termination is in Tianna's best interest. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. "Facts relevant to a child's best interests need only be established by a preponderance of the evidence, although DCS must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535 (citing *In re Kaliyah*, 455 S.W.3d 533, 555 (Tenn. 2015)).

The factors a trial court is to consider in determining whether terminating a parent's rights to a child is in the child's best interest are set forth in Tenn. Code Ann. § 36-1-113(i) and include the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or

---

[3]Contrary to Father's argument, the trial court did not terminate Father's rights on the basis of persistent conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). Thus, we will not address this aspect of Father's argument.

psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court considered the applicable factors set forth above and found as follows:

4.   Pursuant to T.C.A. §36-1-113(i), it is for the best interest of the subject child and the public that all of the parental rights of Respondent, Myron [J. T.], to the child, Tianna [B.], be forever terminated and that the custody, control and complete guardianship of said child should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said child for adoption and to consent to any adoption *in loco parentis*, in that:

(1.)  Respondent, Myron [J. T.], has failed to make any adjustment of circumstance, conduct or conditions to make it safe and in the child's best interest to be placed in the care of said Respondent.

(2.)   Respondent has not maintained regular visitation or other contact with the child.

(3.)  There is no meaningful relationship between the Respondent and child.

(4.)  A change of caretakers and home is likely to have a highly negative effect on the child.

(5.)  Continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.  The likelihood that a successful adoptive placement can be found for any child in foster care diminishes as the child grows older and as the amount of time spent in foster care lengthens.

13

The evidence in the record supports each of these findings by the trial court by a clear and convincing standard. Father admitted at the hearing that he had not seen Tianna since she was two years old or so, he did not suggest that anything prevented him from establishing a relationship with his child, and Tianna had no memory of Father or desire to have him in her life. The record shows that Tianna has been living for three years with a foster mother who is interested in adopting her, Tianna is doing well in the foster home, and Tianna is interested in being adopted. Accordingly, we affirm the trial court's judgment and find that the facts amount to clear and convincing evidence that terminating Father's parental rights to Tianna is in her best interest.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment terminating Father's parental rights to Tianna. Costs of this appeal shall be taxed to the appellant, Myron J. T., for which execution shall issue if necessary.

_____

ANDY D. BENNETT, JUDGE

14